## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LYDIA GALVEZ,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social<br>Security,<br><br>                    Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:15-CV-03156-LRS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA* |

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 19).

## JURISDICTION

Lydia Galvez, Plaintiff, applied for Title II Disability Insurance benefits (DIB) and Title XVI Supplemental Security Income benefits (SSI) on August 15, 2011. The applications were denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on October 29, 2013, before Administrative Law Judge (ALJ) Larry Kennedy. Plaintiff testified at the hearing, as did Vocational Expert (VE) Trevor Duncan. On December 6, 2013, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

1

**STATEMENT OF FACTS**

2      The facts have been presented in the administrative transcript, the ALJ's

3  decision, the Plaintiff's and Defendant's briefs, and will only be summarized here.  At

4  the time of the administrative hearing, Plaintiff was 48 years old.  She has past

5  relevant work experience as a certified nurse aide (CNA).  Plaintiff alleges disability

6  since November 16, 2008, on which date she was 43 years old.  Her date last insured

7  for Title II benefits is June 30, 2011.

8

9

**STANDARD OF REVIEW**

10      "The [Commissioner's] determination that a claimant is not disabled will be

11  upheld if the findings of fact are supported by substantial evidence...."  *Delgado v.*

12  *Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial evidence is more than a mere

13  scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less

14  than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);

15  *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir.

16  1988).  "It means such relevant evidence as a reasonable mind might accept as

17  adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct.

18  1420 (1971).  "[S]uch inferences and conclusions as the [Commissioner] may

19  reasonably draw from the evidence" will also be upheld.  *Beane v. Richardson*, 457

20  F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).

21  On review, the court considers the record as a whole, not just the evidence supporting

22  the decision of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir.

23  1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

24      It is the role of the trier of fact, not this court to resolve conflicts in evidence.

25  *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational

26  interpretation, the court must uphold the decision of the ALJ.  *Allen v. Heckler*, 749

27  F.2d 577, 579 (9th Cir. 1984).

28

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 2**

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ  erred in:  1) improperly assessing Plaintiff's fibromyalgia under Social Security Ruling (SSR) 12-2p; 2) improperly discounting Plaintiff's credibility; and 3) improperly weighing the medical evidence.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id.*

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987).  Step one determines if she is engaged in substantial gainful activities.  If she is, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i).  If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).  If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has "severe" medical impairments,

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 4**

those being:  degenerative disk disease of the lumbar and cervical spine; degenerative joint disease of the right acromioclavicular joint and right full-thickness rotator cuff tear; pain disorder; and major depressive disorder; 2) Plaintiff's impairments  do not meet or equal any of the impairments listed in  20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) in that she can stand and/or walk about six hours and sit for about six hours in an eight hour workday with normal breaks; she can lift and carry up to 20 pounds occasionally and up to 10 pounds frequently, with both upper extremities or the with the left (dominant) extremity alone; using just her right upper extremity, she can occasionally lift and/or carry articles such as docket files, ledgers and small tools.  With regard to manipulative and postural limitations, the ALJ found Plaintiff should avoid reaching overhead with her right upper extremity; she can occasionally reach below shoulder level with her right upper extremity; she cannot crawl or climb ladders, ropes, or scaffolding; she can frequently balance; she can occasionally stoop, kneel, crouch, or climb ramps or stairs.  With regard to environmental limitations, the ALJ found Plaintiff should avoid concentrated exposure to vibration and workplace hazards.  With regard to non-exertional mental limitations, the ALJ found Plaintiff can perform simple, routine tasks and follow short and simple instructions; can perform work that requires little or no judgment and can perform simple duties that can be learned on the job in a short period; and requires a predictable work environment with few work setting changes;  4)  Plaintiff's RFC does not allow her to perform her past relevant work, but (5) it does allow her to perform other jobs existing in significant numbers in the national economy as identified by the VE including cashier II, ticket taker, and office helper.  Accordingly, the ALJ concluded the Plaintiff is not disabled.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

1

**FIBROMYALGIA**

2   Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous

3   connective tissue components of muscles, tendons, ligaments, and other tissues.

4   *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004).  Common symptoms include

5   "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a

6   pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue

7   associated with the disease."  *Id.* at 589-90 (citations omitted).  Fibromyalgia "is

8   diagnosed entirely on the basis of patients' reports of pain and other symptoms" and

9   "there are no laboratory tests to confirm the diagnosis."  *Id.* at 590.

10   SSR 12-2p, 77 Fed. Reg. 143, 43640 (July 25, 2012), 2012 WL 3104869,

11   specifically addresses the evidence the Commissioner evaluates when a claimant seeks

12   disability benefits due to fibromyalgia.  In order to establish that she has a medically

13   determinable impairment (MDI) of fibromyalgia (FM), a claimant must provide

14   evidence from a licensed physician documenting "that the physician reviewed the

15   person's medical history and conducted a physical exam."  2012 WL 3104869 at *2.

16   A physician must provide the evidence described in  one of two sets of diagnostic

17   criteria issued by the American College of Rheumatology (ACR), those being: 1) the

18   1990 ACR Criteria for the Classification of Fibromyalgia; and 2) the 2010 ACR

19   Preliminary Diagnostic Criteria.  *Id.* at *2-3.

20   The 1990 ACR criteria includes all three of the following: (1) a history of

21   widespread pain- pain in all quadrants of the body (the right and left sides of the body,

22   both above and below the waist) and axial skeletal pain (the cervical spine, anterior

23   chest, thoracic spine, or low back)- that has persisted (or that persisted) for at least

24   three months; (2) that a patient report pain in at least 11 of 18 tender points above and

25   below the waist bilaterally; and (3) evidence that other disorders that could cause the

26   symptoms or signs were excluded, such as laboratory testing which may include

27   imaging and other laboratory tests such as complete blood counts, erythrocyte

28

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 6**

1    sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor.
2    2012 WL 3104869 at *2-3.   Other physical and mental disorders having symptoms
3    or signs similar or the same as fibromyalgia include rheumatologic disorders,
4    myofacial pain syndrome, polymyalgia, rheumatica, chronic Lyme disease, and
5    cervical hyperextension-associated or hyperflexion-associated disorders.  2012 WL
6    3104869 at n. 7.

7    The 2010 ACR criteria includes numbers (1) and (3) of the 1990 criteria, but
8    in lieu of there being pain in at least 11 of 18 tender points, requires "[r]epeated
9    manifestations of six or more FM symptoms, signs, or co-occurring conditions,
10   especially manifestations of fatigue, cognitive or memory problems ("fibro fog"),
11   waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome.  2012
12   WL 3104869 at *3.   Symptoms and signs that may be considered include the
13   following "somatic symptoms:" muscle pain, irritable bowel syndrome, fatigue or
14   tiredness, thinking or remembering problems, muscle weakness, headache, pain or
15   cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression,
16   constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred
17   vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon[1], hives
18   or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in
19   taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity,
20   hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms.  *Id*,
21   at n. 9.  "Co-occurring conditions" which may be considered in addition to irritable
22   bowel syndrome or depression include anxiety disorder, chronic fatigue syndrome,

---

[1] Raynaud's Phenomenon is characterized by a pale to blue to red sequence
of color changes of the digits, most commonly after exposure to cold.  It occurs
because of a spasm of blood vessels.  www.MedicineNet.com

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

1   irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder,

2   gastroesophageal reflux disorder, migraine, or restless leg syndrome. *Id*. at n. 10.

3       The ALJ concluded that Plaintiff did not have a medically determinable

4   impairment of fibromyalgia for the following reasons:

> At the hearing, the claimant reported having a wide array of
> pain symptoms and asserted that she had been diagnosed with
> fibromyalgia [citation omitted]. In March 2011, the claimant
> visited treating source Dr. Heisey and reported having diffuse
> pain symptoms that prevented her from working. She displayed
> no signs of arthritis and displayed normal strength and range of
> motion in her alleged areas of impairment. Dr. Heisey commented
> that "I see no evidence of a systemic rheumatologic disorder
> or other explanation for her diffuse pain" [citation omitted]. In
> December 2012, Dr. Heisey examined . . . the claimant and found
> "multiple tender points to palpation." He then expressed that
> the claimant had "diffuse pain most consistent with fibromyalgia
> associated with sleep disturbance and depression" [citation
> omitted]. However, Dr. Heisey did not specify the number or
> location of the claimant's tender points. . . . Dr. Heisey's medical
> records do not indicate that the claimant's symptoms match either
> set of the ACR criteria [1990 and 2010]. His own remarks
> indicate that his diagnosis of fibromyalgia was not conclusive,
> but that this diagnosis was "most consistent" with the claimant's
> reported symptoms. The claimant's medical evidence of record
> does not otherwise provide detailed tender point testing or
> an accounting of six or more fibromyalgia symptoms or
> co-occurring conditions. In addition, there is no discussion
> by Dr. Heisey that other disorders . . . could cause the symptoms
> or signs that were excluded (SSR 12-2p).

18  (AR at pp. 22-23).

19      As Plaintiff points out, the ALJ wrongly attributed to Kyle Heisey, M.D., the

20  December 2012 examination results finding "multiple tender points to palpation"

21  and the conclusion that Plaintiff had "diffuse pain most consistent with fibromyalgia

22  associated with sleep disturbance and depression." This was in fact the conclusion

23  reached by Wendy Eider, M.D., the rheumatologist to whom Dr. Heisey referred

24  Plaintiff for an examination.

25      Plaintiff asserts the record, in particular Dr. Eider's report, establishes that the

26  first criterion of both the 1990 and 2010 diagnostic criteria is satisfied, that being a

27  history of widespread pain- pain in all quadrants of the body (the right and left sides

28

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 8**

of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)- that has persisted (or that persisted) for at least three months.  Dr. Eider's report indicates that Plaintiff's right shoulder had "decreased abduction with pain on rotation tenderness over the supraspinatus tendon," while the left shoulder "had fairly good ROM [range of motion] pain to palpation."  (AR at p. 475).  With regard to Plaintiff's hips, Dr. Eider noted "[f]ull ROM, tenderness over the greater trochanters[2] bilaterally."  (*Id*.).  And with regard to the spine, Dr. Eider noted "[m]oderate tenderness along the thoracic spine" and "decreased ROM pain with movement" concerning the lumbar spine (low back). (*Id*.). Dr. Eider did not, however, specifically acknowledge there was a "history" of pain and that it had persisted for at least three months.

Plaintiff further contends "[t]here is no reason to doubt that Dr. Eider's tender point examination was performed according to the [1990] diagnostic criteria for this disease, but it is clear that as a rheumatologist she was familiar with these requirements."  (ECF No. 21 at p. 3).  While the court does not believe such an assumption can be justified at this point, it does believe that Dr. Eider's finding of "multiple tender points to palpation" is ambiguous and may indeed suggest she found pain in 11 of 18 tender points above and below the waist bilaterally, but simply did not specify that in her report.

The ALJ has a basic duty to inform himself about facts relevant to his decision. *Heckler v. Campbell*, 461 U.S. 458, 471 n. 1, 103 S.Ct. 1952 (1983).  The ALJ's duty

---

[2] The trochanter is one of the two bony prominences toward the near end of the thighbone (femur).  The greater trochanter is a powerful protrusion located at the proximal (near) and lateral (outside) part of the shaft of the femur.

www.MedicineNet.com

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

1   to develop the record exists even when the claimant is represented by counsel.
2   *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9ᵗʰ Cir. 2001).  The duty is triggered by
3   ambiguous or inadequate evidence in the record and a specific finding of ambiguity
4   or inadequacy by the ALJ is not necessary.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9ᵗʰ
5   Cir. 2011).  On remand, the ALJ will further develop the record to ascertain whether
6   Plaintiff met the tender points criterion at the relevant time, and whether Plaintiff had
7   a "history" of pain in all quadrants of the body and the axial spine which persisted at
8   least three months.[3]

---

[3] In August 2013, ARNP Kimberly Rodgers saw Plaintiff for a follow up

appointment regarding Plaintiff's right shoulder.  Rodgers wrote that her

examination showed "diffuse pain throughout shoulder and unable to localize

[with] palpation" and that there were "[n]o discernable trigger points in UE [upper

extremity], chest or neck."  (AR at pp. 748-49).  First of all, it is clear that Rodgers

was not focusing on a whole body exam for fibromyalgia.  Her examination was

limited to the upper body and, in particular Plaintiff's right shoulder.  Secondly,

ARNP Rodgers is not an "acceptable medical source" for either diagnosing

fibromyalgia or ruling out such a diagnosis.  Nurse practitioners, physicians'

assistants, and therapists (physical and mental health) are not "acceptable medical

sources" for the purpose of establishing if a claimant has a medically determinable

impairment.  20 C.F.R. §§404.1513(a) and 416.913(a).  Raymond Snyder, M.D., is

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 10**

1    Plaintiff contends the ALJ "made no attempt to consider [the] alternate
2    diagnostic requirement" of repeated manifestations of six or more fibromyalgia
3    symptoms, signs, or co-occurring conditions, "despite numerous signs being amply
4    documented in the record, at least four of which are found in Dr. Eider's assessment
5    alone." (ECF No. 21 at p. 4).  While the court has reviewed the record and can also
6    ascertain with some reasonable degree of probability the four symptoms or co-
7    occurring conditions in Dr. Eider's assessment to which Plaintiff refers, it is not the
8    court's responsibility, but the Plaintiff's responsibility and burden at step two to
9    identify with specificity what in the medical record amply documents "**repeated**
10   manifestations of **six or more** symptoms, signs, or co-occurring conditions."
11   (Emphasis added).  The Plaintiff has not done so yet, and the court will not, at this
12   point, conclude that this diagnostic criterion is satisfied.

13   On the other hand, Plaintiff makes a compelling argument that the current
14   record establishes that  other disorders that could cause the symptoms or signs have
15   been excluded.  As Plaintiff points out, Dr. Eider observed there was "no evidence for
16   inflammatory arthritis or underlying connective tissue disease," and while Plaintiff
17   had osteoarthritis in her neck and lower back, that "[did] not explain all her pain and
18   disability."  (AR at p. 475).  In May 2012, Dr. Heisey "initiated a referral to
19   rheumatology" precisely because he was unable to ascertain the etiology of Plaintiff's
20   diffuse pain.  Furthermore, prior laboratory testing in June 2011 (thyroid, ANA
21   (Antinuclear Antibody Panel), and rheumatoid factor) had come back negative,
22   thereby excluding other disorders (no thyroid disorder, no active autoimmune disease

23

24   _____

25   an "acceptable medical source," but he too did not conduct a whole body

26   examination for fibromyalgia and his comment about "no localizing tenderness"

27   was limited to Plaintiff's right shoulder.  (AR at pp. 760-63).

28   **ORDER GRANTING PLAINTIFF'S**
     **MOTION FOR SUMMARY JUDGMENT- 11**

such as lupus or rheumatoid arthritis).  (AR at p. 478).  Dr. Eider referred to this negative testing in her own report in conjunction with her December 2012 examination of the Plaintiff[4], and further noted that in January 2012, Plaintiff had a normal "hemogram" (CBC or complete blood count) and a normal "chem panel." (AR at p. 475).

The Commissioner contends there is evidence in the record showing "that Plaintiff's treatment team and the State agency physicians had not excluded other conditions as possible sources of her symptoms."  (ECF No. 19 at p. 4).  The Commissioner cites to a March 2011 report from Dr. Heisey, as well as  a January 2012 report from State agency physician Robert Hoskins, M.D., opining that Plaintiff's only medically determinable impairment based on his review of the record was obesity (AR at p. 103), and an April 2012 report from Jeffrey Merrill, M.D., that purportedly indicates Plaintiff's only medically determinable impairments were a spine disorder and major joint dysfunction (AR at p. 134), although Dr. Merrill does not explicitly say that.  Significantly, all three of these reports pre-date Dr. Eider's December 2012 fibromyalgia diagnosis.  Because fibromyalgia was not even suggested as a diagnosis before December 2012, whatever is contained in the aforementioned reports of Drs. Heisey, Hoskins and Merrill cannot constitute diagnoses ruling out possible sources of Plaintiff's symptoms other than fibromyalgia. Moreover, Dr. Heisey's March 2011 comment that "I see no evidence of a systemic rheumatologic disorder or other explanation for her diffuse pain" (AR at p. 414)

---

[4] Laboratory testing from June 2011 revealed Plaintiff's "sed rate" (erythrocyte sedimentation rate) was 4, which is normal in females.

www.MedicineNet.com

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

1 obviously did not identify any specific condition that might be the source of Plaintiff's
2 symptoms other than fibromyalgia and, as noted, the very reason he referred Plaintiff
3 to Dr. Eider for a rheumatology consult was to identify the source of Plaintiff's
4 symptoms.

5

6 **REMAND**

7      Social security cases are subject to the ordinary remand rule which is that when
8 "the record before the agency does not support the agency action, . . . the agency has
9 not considered all the relevant factors, or . . . the reviewing court simply cannot
10 evaluate the challenged agency action on the basis of the record before it, the proper
11 course, except in rare circumstances, is to remand to the agency for additional
12 investigation or explanation." *Treichler v. Commissioner of Social Security*
13 *Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co.*
14 *v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

15      On remand, the Commissioner will follow the directive contained in Paragraph
16 III. C. of SSR 12-2p regarding "When There Is Insufficient Evidence for Us to
17 Determine Whether the Person Has an MDI of FM or is Disabled?" The ALJ may
18 recontact Dr. Eider to see if the necessary information is able to ascertain whether the
19 1990 or 2010 diagnostic criteria are met; request additional existing records for that
20 purpose; ask the Plaintiff or others for more information for that purpose; or purchase
21 a consultative examination for that purpose. 2012 WL3104869 at *4.

22      At this juncture, the court will not address the issues Plaintiff raises regarding
23 the weighing of medical evidence and the discounting of Plaintiff's credibility
24 because, as both Plaintiff and the Commissioner acknowledge, the ALJ's finding that
25 Plaintiff did not have a severe medically determinable impairment of fibromyalgia at
26 step two clearly factored into his weighing of medical evidence, his credibility
27 analysis, and therefore his conclusion about Plaintiff's RFC. A finding on remand

28
**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

that Plaintiff has a severe medically determinable impairment of fibromyalgia would necessitate a re-weighing of the medical evidence and a new credibility analysis.

**CONCLUSION**

Plaintiff's Motion For Summary Judgment (ECF No. 14) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 19) is **DENIED**. The Commissioner's decision is **REVERSED**. Pursuant to sentence four of 42 U.S.C. §405(g) and § 1383(c)(3), this matter is **REMANDED** to the Commissioner for further development of the record as set forth above. An application for attorney fees may be filed by separate motion.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this ___19th___ day of January, 2017.


                        _____s/Lonny R. Suko_____
                              LONNY R. SUKO
                        Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 14**